UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

SHIRLEEN B. ELLIS                                    CIVIL ACTION

VERSUS                                               NO. 14-589

CAROLYN W. COLVIN, ACTING                            SECTION "F" (2)
COMMISSIONER OF SOCIAL SECURITY

## FINDINGS AND RECOMMENDATION

Plaintiff, Shirleen B. Ellis, proceeding pro se, seeks judicial review pursuant to Section 405(g) of the Social Security Act (the "Act") of the final decision of the Commissioner of the Social Security Administration ("Commissioner"), denying plaintiff's claim for disability insurance benefits ("DIB") and supplemental security income benefits ("SSI") under Titles II and XVI of the Act. 42 U.S.C. §§ 423, 1382c. This matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b) and Local Rule 73.2(B).

I.   PROCEDURAL HISTORY

Ellis filed her applications for DIB and SSI on June 20, 2011, alleging disability beginning April 21, 2011, due to problems with her head, shoulders, knees, hands, neck, back and elbows. (Tr. 82, 98, 252-55, 259-65, 314, 318). After her claims were denied at the agency level, she requested a hearing before an Administrative Law Judge (ALJ), which was held on March 8, 2012. The ALJ issued a decision denying the application for benefits on March 29, 2012. (Tr. 114-25). Ellis requested review by the Appeals

Council, which was granted, and the matter was remanded to the ALJ on July 1, 2013, for additional findings.  (Tr. 131-33).  The ALJ held a second hearing on September 4, 2013.  (Tr. 26-57).  The ALJ rendered a partially favorable decision on October 2, 2013, finding that Ellis was disabled beginning on December 12, 2012, and continuing through the date of the decision, but she was <u>not</u> disabled from her alleged onset date of April 21, 2011 through December 11, 2012.  (Tr. 9-18).  After the Appeals Council denied review of the unfavorable portion of the ALJ's decision on February 5, 2014, the ALJ's decision became the Commissioner's final decision for purposes of this court's review.  (Tr. 1-3).

Ellis filed a timely memorandum in support of her appeal.  Record Doc. No. 11. Defendant filed a timely reply memorandum.  Record Doc. No. 14.

II.    <u>STATEMENT OF ISSUES ON APPEAL</u>

Ellis, proceeding pro se, contends that the ALJ made the following errors:

A.    Plaintiff's work history began in 1979, not 1989, and was therefore "ten years short."

B.    The Appeals Council failed to consider new evidence that Ellis submitted to it.

C.    Plaintiff's disability onset date should be April 2011, based on the medical evidence regarding her problems with her hands and back.

In addition to reviewing the record in light of these contentions, the court will review the entire record to determine whether substantial evidence supports the ALJ's findings.

2

III.   ALJ'S FINDINGS RELEVANT TO ISSUES ON APPEAL

1.   Ellis meets the insured status requirements for DIB through December 31, 2015.

2.   Since the alleged onset date of April 21, 2011, she has had severe impairments consisting of bilateral epicondylitis,[1] generalized arthralgias, Sjögren's syndrome,[2] major depressive disorder and schizoaffective disorder.

3.   Beginning on the established onset date of disability, December 12, 2012, plaintiff has had severe impairments consisting of bilateral epicondylitis, generalized arthralgias, Sjögren's syndrome, major depressive disorder, schizoaffective disorder, tenosynovitis[3] of the right index finger and degenerative disc disease.

4.   Prior to December 12, 2012, when she became disabled, Ellis had the residual functional capacity to perform light work, except that she was limited to no more than occasional overhead reaching, climbing, stooping, kneeling, crouching and crawling, and to work of a simple, routine nature.

5.   Prior to December 12, 2012, she was capable of performing her past relevant work as a bottle packer and a cashier, as she actually performed that work.

6.   Beginning on December 12, 2012, plaintiff's residual functional capacity prevented her from being able to perform past relevant work.

---

[1]An epicondyle is a prominence on the distal part of a long bone serving for the attachment of muscles and ligaments.  MedlinePlus (Merriam-Webster, Inc. 2014), http://www.merriam-webster.com/medlineplus/epicondyle (visited Oct. 30, 2014).  The medial epicondyle is on the inner aspect of the distal part of the humerus, id., which is the longest bone of the upper arm, extending from the shoulder to the elbow.  Id., http://www.merriam-webster.com/medlineplus/humerus.  Epicondylitis is inflammation of the epicondyle.  Id., http://www.merriam-webster.com/medlineplus/epicondylitis.

[2]Sjögren's syndrome is a chronic inflammatory autoimmune disease characterized by dryness of mucous membranes and infiltration of the affected tissues by lymphocytes, and often associated with rheumatoid arthritis. Id., http://www.merriam-webster.com/medlineplus/Sjögren (visited Oct. 30, 2014).

[3]Tenosynovitis is inflammation of a tendon sheath.  Id., http://www.merriam-webster.com/medlineplus/tenosynovitis (visited Oct. 31, 2014).

7. Since December 12, 2012, considering her age, education, work experience and residual functional capacity, there are no jobs that exist in significant numbers in the national economy that Ellis can perform.

8. She was not disabled before December 12, 2012, but became disabled on that date and has continued to be disabled through the date of the decision.

(Tr. 11-17).

IV.   ANALYSIS

A.   Standards of Review

The function of this court on judicial review is limited to determining whether there is substantial evidence in the record to support the final decision of the Commissioner as trier of fact and whether the Commissioner applied the appropriate legal standards in evaluating the evidence.  Richard ex rel. Z.N.F. v. Astrue, 480 F. App'x 773, 776 (5th Cir. 2012) (citing Perez v. Barnhart, 415 F.3d 457, 461 (5th Cir. 2005)); Stringer v. Astrue, 465 F. App'x 361, 363 (5th Cir. 2012) (citing Waters v. Barnhart, 276 F.3d 716, 716 (5th Cir. 2002)).  Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  Richardson v. Perales, 402 U.S. 389, 401 (1971); Richard ex rel. Z.N.F., 480 F. App'x at 776; Stringer, 465 F. App'x at 363-64; Perez, 415 F.3d at 461.  This court may not reweigh the evidence in the record, try the issues de novo or substitute its judgment for the Commissioner's, even if the evidence weighs against the Commissioner's decision.  Halterman ex rel. Halterman v.

Colvin, No. 12-31099, 2013 WL 5913945, at *2 (5th Cir. May 9, 2013) (citing Newton v. Apfel, 209 F.3d 448, 452 (5th Cir. 2000)); Stringer, 465 F. App'x at 364. The Commissioner, rather than the courts, must resolve conflicts in the evidence. Luckey v. Astrue, 458 F. App'x 322, 324 (5th Cir. 2011) (citing Selders v. Sullivan, 914 F.2d 614, 617 (5th Cir. 1990)); Newton, 209 F.3d at 452.

The ALJ is entitled to make any finding that is supported by substantial evidence, regardless of whether other conclusions are also permissible. See Arkansas v. Oklahoma, 503 U.S. 91 (1992). Despite this court's limited function, it must scrutinize the record in its entirety to determine the reasonableness of the decision reached and whether substantial evidence supports it. Joubert v. Astrue, 287 F. App'x 380, 382 (5th Cir. 2008) (citing Perez, 415 F.3d at 461). Any findings of fact by the Commissioner that are supported by substantial evidence are conclusive. Ray v. Barnhart, 163 F. App'x 308, 311 (5th Cir. 2006) (citing Perales, 402 U.S. at 390); Perez, 415 F.3d at 461.

To be considered disabled and eligible for SSI or DIB,[4] plaintiff must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve

---

[4]The relevant law and regulations governing claims for DIB and SSI are identical. Carmon v. Barnhart, 81 F. App'x 410, 411 n.1 (3d Cir. 2003) (citing Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994)); Baltierra v. Chater, 70 F.3d 1268, 1995 WL 696740, at *1 (5th Cir. Oct. 19, 1995) (citing Haywood v. Sullivan, 888 F.2d 1463, 1467 (5th Cir. 1989)); Bryan v. Halter, 252 F.3d 1357, 2001 WL 422878, at *1 (5th Cir. Apr. 5, 2001) (citing Haywood, 888 F.2d at 1467).

months."  42 U.S.C. §§ 423(d)(1)(A).  The Commissioner has promulgated regulations that provide procedures for evaluating a claim and determining disability.  20 C.F.R. §§ 404.1501 to 404.1599 & appendices, §§ 416.901 to 416.998 (2012).  The regulations include a five-step evaluation process for determining whether an impairment prevents a person from engaging in any substantial gainful activity.[5]  Id. §§ 404.1520, 416.920; Alexander v. Astrue, 412 F. App'x 719, 720 (5th Cir. 2011) (citing Audler v. Astrue, 501 F.3d 446, 447 (5th Cir. 2007)); Perez, 415 F.3d at 461. The five-step inquiry terminates if the Commissioner finds at any step that the claimant is or is not disabled.  Id.

---

[5]The five-step analysis requires consideration of the following:

First, if the claimant is currently engaged in substantial gainful employment, he or she is found not disabled.  20 C.F.R. §§ 404.1520(b), 416.920(b).

Second, if it is determined that, although the claimant is not engaged in substantial employment, he or she has no severe mental or physical impairment which would limit the ability to perform basic work-related functions, the claimant is found not disabled.  Id. §§ 404.1520(c), 416.920(c).

Third, if an individual's impairment has lasted or can be expected to last for a continuous period of twelve months and is either included in a list of serious impairments in the regulations or is medically equivalent to a listed impairment, he or she is considered disabled without consideration of vocational evidence.  Id. §§ 404.1520(d), 416.920(d).

Fourth, if a determination of disabled or not disabled cannot be made by these steps and the claimant has a severe impairment, the claimant's residual functional capacity and its effect on the claimant's past relevant work are evaluated.  If the impairment does not prohibit the claimant from returning to his or her former employment, the claimant is found not disabled.  Id. §§ 404.1520(e), 416.920(e).

Fifth, if it is determined that the claimant cannot return to his or her former employment, then the claimant's age, education, and work experience are considered to see whether he or she can meet the physical and mental demands of a significant number of jobs in the national economy.  If the claimant cannot meet the demands, he or she will be found disabled.  Id. §§ 404.1520(f)(1), 416.920(f)(1).  To assist the Commissioner at this stage, the regulations provide certain tables that reflect major functional and vocational patterns. When the findings made with respect to a claimant's vocational factors and residual functional capacity coincide, the rules direct a determination of disabled or not disabled.  Id. § 404, Subpt. P, App. 2, §§ 200.00-204.00, 416.969 ("Medical-Vocational Guidelines").

The claimant has the burden of proof under the first four parts of the inquiry.  If she successfully carries this burden, the burden shifts to the Commissioner to show that other substantial gainful employment is available in the national economy that the claimant is capable of performing.  When the Commissioner shows that the claimant is capable of engaging in alternative employment, the burden of proof shifts back to the claimant to rebut this finding.  <u>Alexander</u>, 412 F. App'x 720-21; <u>Perez</u>, 415 F.3d at 461.

The court weighs four elements of proof when determining whether there is substantial evidence of disability: "'(1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) the claimant's age, education, and work history.'" <u>Chrisner v. Astrue</u>, 249 F. App'x 354, 356 (5th Cir. 2007) (quoting <u>Wren v. Sullivan</u>, 925 F.2d 123, 126 (5th Cir. 1991)); <u>accord</u> <u>Perez</u>, 415 F.3d at 463.

B.     <u>Factual Background</u>

Ellis testified at the second hearing that she was 49 years old and lived alone in Reserve, Louisiana.  She said she had finished high school and then trained as a process technician at a vocational technical school.  (Tr. 31-32).  She stated that she last worked for about four to six months in July 2011 or 2012 as a machine operator on an assembly line at a hot sauce bottling plant in Reserve.  (Tr. 32-33, 53-54).  She testified that she previously worked as a customer service representative for 12 years at two car rental agencies.  (Tr. 33).  Plaintiff said she worked part-time as a skycap at the airport from

2006 to 2008 and part-time as a cashier at the Grove in the airport in 1998 and 1999, working both part-time jobs while she was also employed at the car rental agency. (Tr. 34). Ellis clarified that the assembly line job was in 2012. She stated that she was employed for that full-time job by a temporary staffing company, which was called both Trillium Staffing and Porsh [phonetic] Staffing. (Tr. 35-37).

Plaintiff testified that she stopped working because she was diagnosed with rheumatoid arthritis, Sjögren's syndrome and fibromyalgia. She stated that her body aches all over all the time and that the medications her doctor prescribed would not allow her to work. She said she was told that Sjögren's syndrome would eventually affect different organs in her body. (Tr. 37). She testified that some days she cannot get out of bed and has to lie in bed until her muscles are ready to move. Ellis stated that she has a bulging disk in her neck and another in her back. She said that her elbows and knees are bad and that she needs surgery on the elbows. She testified that she had trigger finger surgery on August 20, 2013. She stated that she has episodes of feeling extremely hot, weak and faint that caused her once to pass out. (Tr. 38). She said that her back and her knees give out.

Ellis stated that she sees a rheumatologist, Dr. Duplantier, and Dr. Lata, both at Chabert Medical Center ("Chabert"), for her Sjögren's syndrome because she has problems with her eyes. She said she has bad headaches and dizziness for which doctors at Chabert gave her medication. (Tr. 39). She testified that rheumatoid arthritis affects

her whole body.  She stated that she had an MRI on her back because her hip was bothering her and her leg was going numb.  She said she was told that these problems were caused by a bulging disk in her back and something else she could not remember. She stated that she had an appointment to return to a doctor about her back problems.

Plaintiff testified that she had to wear a heart monitor either for a month or a weekend in June or July 2013.  She stated that she was recently told something about her heart not beating properly and that she has a heart murmur.  She said she also had an appointment to see a doctor about that.  (Tr. 40).  She stated that Dr. Verrette at St. Charles Community Health Center told her she has fibromyalgia and that he prescribed Vicodin[6] and an anti-inflammatory medicine for it.  (Tr. 41).

Ellis testified that, on a typical day, she sleeps a lot because most of her medications make her very sleepy.  She said she tries to wake herself up and sit on the porch, but she often goes right back to bed.  She stated that she stays in bed all day most of the time.  She stated that she cooks small things for herself that do not take too long, or that a friend or relative sometimes comes over and cooks for her.  She said she does not eat much.  She testified that she tries to dust her house herself and that not much cleaning is needed.  She said she does her own laundry in a washer and dryer in the house.  She stated that her son or other relatives either shop for her or take her to the

---

[6]Vicodin (generic name: hydrocodone) "is a combination of acetaminophen (Tylenol) and the opioid pain medication hydrocodone used to treat moderate to moderately severe pain."  PDRhealth (PDR Network, LLC 2014), http://www.pdrhealth.com/drugs/vicodin (visited Nov. 2, 2014).

store, and that sometimes she goes by herself to the nearby corner store if she needs something small.  (Tr. 42-43).

Plaintiff said she goes to church twice a month and visits friends on the way home if she is not too sleepy, or they will visit her.  She stated that she sometimes drives.  She testified that basically all of her medications make her sleepy, including Seroquel[7] and Trileptal,[8] which are prescribed by her psychiatrist, Belinda Miller.  (Tr. 43-44).  She said she sees Dr. Miller once a month since her previous psychiatrist, Dr. Sigrist, passed away.  She said she was diagnosed with bipolar disorder and something else.

Ellis testified that she has no hobbies and does not read or play cards.  She said she talks on the phone and does a puzzle every once in a while.  She said that her lawsuit regarding her old job was dismissed by the court.  (Tr. 44-45).

Plaintiff stated that she can walk less than one-half mile because "my legs and stuff give out."  She said her knees give out and her hip is very painful if she walks.  She testified that she has not had any imaging of her hip, and that she had x-rays of her knees some years ago.  She stated that both knees really bother her and she does not know why the x-rays did not show anything wrong with them.  She said she can stand for less than 15 minutes before her knees, back and hips start to hurt, and she cannot sit for long.  She

_____

[7]Seroquel XR (generic name:  quetiapine) is used to treat schizophrenia, bipolar disorder and major depressive disorder.  Id., http://www.pdrhealth.com/drugs/seroquel-xr (visited Nov. 2, 2014).

[8]Trileptal (generic name:  oxcarbazepine) helps reduce the frequency of partial epileptic seizures. Id., http://www.pdrhealth.com/drugs/trileptal (visited Nov. 2, 2014).

testified that her back was bothering her while sitting at the hearing.  She estimated she could lift about 10 pounds.  (Tr. 45-46).

Ellis said she had trigger release surgery on her right index finger on August 20, 2013.  She stated that she had been receiving injections for it, but was told that she could not receive any more.  She stated that surgery was recommended to relieve the pain and that she would return to see the doctor in a few days.  She is right-handed.  (Tr. 46).

Plaintiff clarified that her work on the assembly line involved watching the bottles go through to make sure that the tops were on tight, the bottles were not bent and there were no other defects.  (Tr. 48-49).  She said she took bottles off the line if there was a defect and she sometimes stopped and started the machine.  (Tr. 53).  She stated that her work at the Grove consisted of scooping up candy and putting it in a bag for customers.  (Tr. 49-50).

### C.   Vocational Expert Testimony

A vocational expert, Crystal Younger, Ph.D., testified at the hearing that Ellis's work as a bottle packer and a cashier are both unskilled, light duty jobs.  (Tr. 50, 54).  She stated that plaintiff's job as a skycap is classified as a porter, which is unskilled and medium duty, and that plaintiff's work as a car rental clerk is semiskilled, light duty.  (Tr. 50).

The ALJ posed a hypothetical of a person with plaintiff's age, education and work experience who can do light work with only occasional overhead reaching, climbing,

stooping, kneeling, crouching and crawling, and is limited to work of a simple, routine nature.  Dr. Younger testified that such an individual could perform Ellis's past relevant work as a cashier and a bottle packer.  (Tr. 51).

The ALJ noted that, based on plaintiff's earnings record and testimony, her few months of work as a bottle packer was not substantial gainful activity.  However, after further clarification from Ellis and looking more closely at her earnings record, the ALJ concluded that the job qualified as substantial gainful activity.  (Tr. 52-54).

The ALJ modified the hypothetical to add a limitation that the person would only occasionally be able to grasp with her right, dominant hand.  The vocational expert testified that this person could not perform either of the previously identified past relevant jobs or any other light duty job.  (Tr. 55-56).

D.    Medical Evidence

I have reviewed the extremely voluminous medical records in evidence and the ALJ's summary of the medical evidence.  (Tr. 13-15, 122-25).[9]   I find the ALJ's summary of the medical evidence substantially correct and incorporate it herein by reference, with the modifications, corrections and highlights noted below.

---

[9]In the decision at issue in this case, the ALJ summarized the medical evidence of record since the alleged onset date of April 21, 2011, and incorporated by reference her summary in her first decision (dated March 29, 2012, Tr. 117-25) of the medical evidence before the alleged onset date.

E.     Plaintiff's Appeal

    1.     The ALJ properly considered plaintiff's past relevant work.

Ellis complains that the ALJ failed to consider that her work history began in 1979, not 1989, and that her work history was therefore "ten years short."  Plaintiff's memorandum, Record Doc. No. 11 at p. 1.  The ALJ did not err in this respect because "past relevant work" is defined, for purposes of the Act, as "work that you have done within the past 15 years, that was substantial gainful activity, and that lasted long enough for you to learn to do it."  20 C.F.R. § 416.960(b)(1).

The Commissioner determines a claimant's past relevant work so that the physical and mental demands of that work can be compared to the claimant's residual functional capacity at the time of the alleged disability.  Id. § 416.960(b).  "[W]ork performed 15 years or more prior to the time of adjudication of the claim (or 15 years or more prior to the date the title II disability insured status requirement was last met, if earlier) is ordinarily not considered relevant."  Titles II and XVI:  A Disability Claimant's Capacity to Do Past Relevant Work, In General, SSR 82-62, 1982 WL 31386 at *1 (1982).  The reason for the 15-year limit is that

> [a] gradual change occurs in most jobs in our national economy so that after
> 15 years it is no longer realistic to expect that skills (or proficiencies) and
> abilities acquired in these jobs continue to apply.  The 15-year guide is
> intended to insure that remote work experience which could not reasonably
> be expected to be of current relevance is not applied.

Id. at *2.

The ALJ elicited plaintiff's testimony concerning her work experience since 1998, which was 15 years before the hearing date. Based on plaintiff's testimony and her work history report in the record (Tr. 333), which is consistent with her testimony, the vocational expert testified that Ellis's past relevant work consisted of a bottle packer, cashier, porter and car rental clerk. Dr. Younger's testimony and the ALJ's findings regarding plaintiff's past relevant work are supported by substantial evidence. Accordingly, this assignment of error lacks merit.

2.      The Appeals Council did not fail to consider Ellis's new evidence.

Ellis argues that the Appeals Council failed to consider new evidence that she submitted to it. She attached to her memorandum in this court copies of several medical records, all of which are already in the record. Thus, she has not tried to submit new evidence to the court.

Exhibit 43F of the administrative record consists of thirteen pages of medical records that Ellis submitted to the Appeals Council on October 18, 2013. (Tr. 1108-19). The first eleven pages of this exhibit are dated before the ALJ's decision and are duplicates of evidence that was in the record that the ALJ considered, except that the new copies contain plaintiff's handwritten notes in support of her appeal of the ALJ's decision. (Tr. 1108-17). The only new evidence that Ellis submitted to the Appeals Council consists of the last two pages of Exhibit 43F, which are dated October 14, 2013,

14

eight days after the ALJ's decision.  (Tr. 1118-19).  Therefore, these two pages are the only evidence at issue in this assignment of error.

The Appeals Council denied review of the ALJ's decision on February 5, 2014. Although the denial letter did not specifically mention plaintiff's additional evidence, the Appeals Council stated that it "considered the reasons you disagree with the decision. We found that this information does not provide a basis for changing the Administrative Law Judge's decision."  (Tr. 1-2).  When a claimant has provided new evidence to the Appeals Council "and the Appeals Council addressed that evidence, specifically stating that 'this information does not provide a basis for changing the Administrative Law Judge's decision,'" that statement is sufficient to indicate that the evidence was made a part of the record and was considered by the Appeals Council.  Jones v. Astrue, 228 F. App'x 403, 406-07 (5th Cir. 2007).

Accordingly, this assignment of error lacks merit.

3.    Substantial evidence supports the ALJ's finding that Ellis was not disabled between April 21, 2011 and December 12, 2012.

Before deciding at the fourth step of the sequential evaluation whether a claimant can return to her past relevant work, the ALJ must determine the claimant's residual functional capacity.  Residual functional capacity "is a determination of the most the claimant can still do despite his physical and mental limitations and is based on all relevant evidence in the claimant's record."  Perez, 415 F.3d at 461-62 (citing 20 C.F.R.

§ 404.1545(a)(1)); <u>accord</u> <u>Giles v. Astrue</u>, 433 F. App'x 241, 245 (5th Cir. 2011) (citing 20 C.F.R. §§ 404.1520(e), 404.1545).  The ALJ is solely responsible for assessing the medical evidence and determining the claimant's residual functional capacity.  <u>Taylor v. Astrue</u>, 706 F.3d 600, 602-03 (5th Cir. 2012); <u>Joseph-Jack v. Barnhart</u>, 80 F. App'x 317, 318 (5th Cir. 2003); <u>Perez v. Heckler</u>, 777 F.2d 298, 302 (5th Cir. 1985).

The ALJ found that, before December 12, 2012 (when the medical evidence established that Ellis had additional or worsened disorders that caused her to become disabled as of that date), plaintiff had the residual functional capacity to perform light work, except that she is limited to no more than occasional overhead reaching, climbing, stooping, kneeling, crouching and crawling, and to work of a simple, routine nature. Finally, the ALJ held that, before December 12, 2012, Ellis was capable of performing her past relevant work as a bottle packer and a cashier.

Plaintiff argues that the ALJ erred by failing to find that she was disabled as of April 21, 2011.  She relies on the medical evidence in the record that the ALJ and the Appeals Council considered.  As the ALJ stated, the record as a whole does not substantially support all of the subjective complaints and functional limitations that Ellis alleges are caused by her medical impairments.  Substantial evidence supports the ALJ's

residual functional capacity findings.  The ALJ's summary of the extremely voluminous medical evidence[10] was accurate.

The two pages of new evidence that Ellis submitted to the Appeals Council provide no substantial reason to change the outcome because they are dated long after and do not relate to the relevant time period of April 21, 2011 through December 11, 2012.  Merely because an electromyography and nerve conduction study revealed on October 10, 2013, that Ellis had findings consistent with C8 and S1 radiculopathy in her right paraspinal muscles and right arm (Tr. 1118), or because an orthopedist stated on October 14, 2013, that plaintiff had a reported two-year history of neck and back pain does not establish that the impairment or pain was functionally disabling before December 12, 2012.  (Tr. 1119).  Because those records significantly post-dated the relevant time period, "they are not material to the ALJ's determination that [plaintiff] was not entitled to benefits for the period sought."  Shave v. Apfel, 238 F.3d 592, 597 (5th Cir. 2001) (citing Falco v. Shalala, 27 F.3d 160, 164 (5th Cir. 1994) (evidence relating to subsequent deterioration of a previously non-disabling condition is not material unless it relates to the time period for which benefits were sought and denied); id. at 164 n.20 (noting that claimant was free to seek benefits for the period covered by the additional medical records)); accord Newton, 209 F.3d at 459-60.

---

[10]The record contains more than 1100 pages.  However, many of the medical records are duplicates and triplicates.

"If additional evidence is presented while the case is pending review by the Appeals Council, courts of appeals customarily review the record as a whole, including the new evidence, in order to determine whether the Commissioner's findings are still supported by substantial evidence." Higginbotham v. Barnhart ("Higginbotham II"), 163 F. App'x 279, 282 (5th Cir. 2006) (citing Higginbotham v. Barnhart ("Higginbotham I"), 405 F.3d 332, 337-38 (5th Cir. 2005); Wilkins v. Sec'y, Dep't of Health & Human Servs., 953 F.2d 93, 96 (4th Cir. 1991); Nelson v. Sullivan, 966 F.2d 363, 366 (8th Cir. 1992)). The "after-submitted evidence considered by the Appeals Council constitutes part of the record upon which the final decision on eligibility is based, and . . . all record evidence, irrespective of its submission date, is subject to district court review" under the substantial evidence standard. Beck v. Barnhart, 205 F. App'x 207, 214 (5th Cir. 2006) (citing Higginbotham I, 405 F.3d at 337).

After Higginbotham, district courts in the Fifth Circuit have concluded that the court should review the entire record to determine whether "the Appeals Council has failed to properly evaluate new medical evidence which is so inconsistent with the ALJ's findings that it undermines the ultimate disability determination" and requires that the case "be remanded so that the Appeals Council fully can evaluate the treating source statement as required by law." Booker v. Astrue, No. 3:10-CV-1940-P, 2011 WL 4031096, at *7 (N.D. Tex. Aug. 15, 2011), report & recommendation adopted, 2011 WL 4048408 (N.D. Tex. Sep. 12, 2011) (citations omitted); see also Jones v. Astrue, 228 F.

18

App'x 403, 407 (5th Cir. 2007) ("Jones's new evidence [submitted to the Appeals Council] did not so contradict earlier evidence that a 'weighing' of new and old evidence would be required. . . . [The new] report was . . . not inconsistent with" the medical evidence that the ALJ had considered.).

This court therefore must determine whether the ALJ's decision is still supported by substantial evidence in light of the supplemental evidence presented to the Appeals Council. Payne v. Astrue, No. 11-544, 2012 WL 1090054, at *4 (E.D. La. Feb. 27, 2012), report & recommendation adopted, 2012 WL 1089959 (E.D. La. Mar. 30, 2012) (citing Higginbotham I, 405 F.3d at 337); Williams v. Comm'r of Soc. Sec., No. 1:07CV643, 2008 WL 4335570, *12 (S.D. Miss. Sept. 17, 2008)). I find that the Appeals Council did not err in holding that the new evidence "did not provide a basis for reversal, and that the ALJ's decision was based upon substantial evidence from the record as a whole." Beck, 205 F. App'x at 214.

Ellis argues that the entirety of the medical evidence establishes that she suffered from pain and other severe limitations during the relevant time period. "While pain can be disabling, it is not an automatic ground for entitlement to disability benefits. Pain is recognized as a disabling condition under the Act only where it is constant, unremitting, and wholly unresponsive to therapeutic treatment. The test for disability under the Act is not satisfied merely because Plaintiff cannot work without some pain or discomfort." Alvarez v. Colvin, No. 3:12-CV-03569-BK, 2013 WL 1858197, at *7 (N.D. Tex. May 3,

2013) (citing <u>Hames v. Heckler</u>, 707 F.2d 162, 166 (5th Cir. 1983)); <u>accord</u> <u>Nugent v.</u> <u>Astrue</u>, 278 F. App'x 423, 427 (5th Cir. 2008) (citing <u>Cook v. Heckler</u>, 750 F.2d 391, 395 (5th Cir. 1985)); <u>Beck v. Barnhart</u>, 205 F. App'x 207, 212 (5th Cir. 2006) (citing <u>Cook</u>, 750 F.2d at 395); <u>Selders</u>, 914 F.2d at 618.

It is within the ALJ's discretion to determine the disabling nature of a claimant's pain, and the ALJ's determination is entitled to considerable deference. <u>Jenkins v.</u> <u>Astrue</u>, 250 F. App'x 645, 647 (5th Cir. 2007) (citing <u>Chambliss v. Massanari</u>, 269 F.3d 520, 522 (5th Cir. 2001)). Whether a claimant is able to work despite some pain is within the province of the ALJ, and the determination should be upheld if supported by substantial evidence. <u>Id.</u> (citing <u>Chambliss</u>, 269 F.3d at 522; <u>Falco</u>, 27 F.3d at 164).

The ALJ acknowledged that, since the alleged onset date of April 21, 2011 and before December 12, 2012, when he found she became disabled, Ellis had several severe physical and mental impairments. However, "'[t]he mere presence of some impairment is not disabling per se. Plaintiff must show that [she] was so <u>functionally impaired</u> [by her diagnosed impairment] that she was precluded from engaging in any substantial gainful activity.'" <u>Bordelon v. Astrue</u>, 281 F. App'x 418, 422 (5th Cir. 2008) (quoting <u>Hames</u>, 707 F.2d at 165) (emphasis added); <u>accord</u> <u>Anthony v. Sullivan</u>, 954 F.2d 289, 293 (5th Cir. 1992).

Subjective complaints of pain or other symptoms must be corroborated by objective medical evidence. <u>Quijas v. Astrue</u>, 298 F. App'x 391, 393 (5th Cir. 2008)

(citing Chambliss, 269 F.3d at 522).  Subjective complaints may be discounted when the alleged symptoms are not consistent with the objective evidence.  Brown v. Astrue, 344 F. App'x 16, 21 (5th Cir. 2009); Hernandez, 278 F. App'x at 340; Dunbar v. Barnhart, 330 F.3d 670, 672 (5th Cir. 2003).

Determining the credibility of plaintiff's subjective evidence of pain and disability is a necessary part of the ALJ's consideration of the evidence.  Luckey, 458 F. App'x at 326 (citing Scott v. Heckler, 770 F.2d 482, 485 (5th Cir. 1985)); Perez, 415 F.3d at 462. The ALJ is bound to explain her reasons for rejecting a claimant's subjective complaints, but "is not required to 'follow formalistic rules in [her] articulation.'"  Hernandez v. Astrue, 278 F. App'x 333, 339 (5th Cir. 2008) (quoting Falco, 27 F.3d at 164).  The ALJ has the responsibility to evaluate the credibility of witnesses, Masterson v. Barnhart, 309 F.3d 267, 272 (5th Cir. 2002), and "credibility conclusions are 'precisely the kinds of determinations that the ALJ is best positioned to make.'"  Spruill v. Astrue, 299 F. App'x 356, 358 (5th Cir. 2008) (quoting Falco, 27 F.3d at 164).  Thus, the ALJ's credibility evaluation is entitled to considerable deference by this court.  McKnight v. Astrue, 340 F. App'x 176, 181 (5th Cir. 2009) (citing Newton, 209 F.3d at 459); Bedford v. Astrue, 236 F. App'x 957, 962 (5th Cir. 2007) (citing Newton, 209 F.3d at 459).  The ALJ is required only to review the entire record, resolve conflicts in the evidence and state specific reasons for her credibility findings, supported by the evidence.  Luckey, 458 F. App'x at 324; Giles v. Astrue, 433 F. App'x 241, 249 (5th Cir. 2011).

The ALJ explained why she found that plaintiff's subjective symptoms and alleged limitations prior to December 12, 2012, were inconsistent with the evidence as a whole. (Tr. 14-15).  The ALJ incorporated into her residual functional capacity assessment all the functional limitations that she found credible.  Plaintiff's testimony is insufficient to establish any additional limitations.

The ALJ considered the record as a whole.  Having done so, the ALJ's findings regarding plaintiff's residual functional capacity are substantially supported by the evidence as a whole, including the opinions of her treating physicians between April 2011 and December 2012, and the opinions of a consultative examiner, internist Miljana Mandich, M.D.  (Tr. 833-39).  These opinions are well supported by the objective medical evidence and other evidence of record.  "The ALJ found the medical evidence more persuasive than the claimant's own testimony.  These are precisely the kinds of determinations that the ALJ is best positioned to make."  Falco, 27 F.3d at 164.

I have carefully reviewed the entire record, including all of the medical evidence, and find that it substantially supports the ALJ's findings.  Accordingly, this assignment of error lacks merit.

CONCLUSION

The ALJ properly considered plaintiff's past relevant work for the 15 years before the hearing date.  The Appeals Council considered the new evidence that Ellis submitted to it.  The ALJ's findings regarding plaintiff's residual functional capacity and her ability to perform her past relevant work are supported by substantial evidence.

**RECOMMENDATION**

Accordingly, IT IS RECOMMENDED that plaintiff's complaint be DISMISSED WITH PREJUDICE.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  Douglass v.

United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[11]

New Orleans, Louisiana, this ___3rd___ day of November, 2014.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[11]Douglass referred to the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.